IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, as subrogee of BETTY DAVIS-CRACRAFT,<br><br>        Plaintiffs,<br><br>vs.<br><br>GREE USA, INC.,<br><br>        Defendant. | 4:18-cv-00275-RGE-HCA<br><br><br><br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES |

## I.    INTRODUCTION

On March 7, 2019, Plaintiff Allied Property and Casualty Insurance Company ("Allied") filed a Motion to Compel Answers to Discovery [22]. Defendant Gree USA, Inc. ("Gree") filed a resistance [23] on March 20, 2019. The Court held a telephonic oral argument on April 9, 2019 during a previously scheduled status conference [24]. The Court considers the motion submitted and ready for ruling.

## II.    FACTUAL AND PROCEDURAL HISTORY

Allied commenced this lawsuit on August 16, 2018. In the complaint, Allied, as subrogee of its insured, alleges that a Soleus Air dehumidifier, model GM-DEH-45-1 (hereinafter referred to as the "Dehumidifier") "designed, manufactured, marketed, distributed, sold, and/or placed into the stream of commerce" by Gree caught fire in the insured's home on November 29, 2015, resulting in excess of $200,000 in damages to its insured's real and personal property. Allied has alleged both a products liability and a negligence claim against Gree.

1

Common to both of Allied's claims, it notes that the Dehumidifier was the subject of a recall issued by the Consumer Product Safety Commission on or about September 12, 2013, because the "dehumidifiers can overheat, smoke, and catch fire, posing fire and burn hazards to consumers." Allied's product liability claim alleges that the Dehumidifier was defective in design or manufacture and unreasonably dangerous when it left Gree's custody and control, Gree knew or should have known of the defects, and failed to address them or otherwise warn customers. Allied's negligence claim similarly alleges that Gree breached its duty by "designing, manufacturing, marketing, distributing, and selling the Dehumidifier with the dangerous defect and/or by failing to warn of the defect and/or by failing to adopt a safer, practical, feasible, or otherwise reasonable alternative design that could have been reasonably adopted that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Dehumidifier."

Gree either denies or claims they have insufficient information and/or knowledge upon which to form a belief as to the truth or falsity on virtually every substantive allegation made in Allied's complaint. In addition, Gree raises 33 affirmative defenses. Gree's affirmative defenses run the gamut from improper service of process to asserting that Gree is entitled to a set-off and/or liability protection. Gree specifically alleges that the insured was negligent in various ways, including failure to comply with recall warnings. Gree also alleges as numerous "separate and complete defense[s]" that any damages to the insured were caused by third parties not named in the lawsuit, or otherwise not under Gree's control.

Turning to the instant Motion, On October 19, 2018, Allied propounded its First Set of Requests for Production and First Set of Interrogatories on Gree. Gree's responses were initially due on November 19, 2018. Allied thereafter agreed to two extensions for Gree to provide its

discovery responses. Allied agreed to a 30-day extension until December 19, 2019, and a second 14-day extension until Wednesday, January 2, 2019. Gree did not provide its responses until Friday, January 4, 2019. Gree's eventual responses apparently resulted in the production of a single partial insurance policy, instead raising objections that generally asserted the discovery requests were overbroad. In addition, Gree's counsel failed to have a representative of Gree verify the interrogatory answers as required by FED. R. CIV. P. 33(b)(5). Allied wrote to Gree on February 8, 2019, describing the deficiencies with the discovery responses provided. On February 19, 2019, Gree's counsel, Jeff Murphy[1], informed Allied that he would supplement the deficient discovery responses by March 5, 2019, in conjunction with providing a proposed confidentiality agreement.

On February 27, the Court held a telephonic status conference to discuss ongoing discovery issues. Along with the foregoing, the Court was informed that Gree's Initial Disclosures had not been sent to Allied and were thus over four months overdue. As to the Initial Disclosures, the Court set a new deadline for Gree to send full and complete initial disclosures by March 13, 2019. As to the supplementation of the deficient discovery responses, the Court advised Allied should file a motion to compel if Gree failed to comply with the March 5, 2019 deadline. Allied then filed the current motion.

### III. LEGAL STANDARD AND ANALYSIS

Allied seeks complete answers to the interrogatories and requests for production. In total, there are at least 48 discovery requests made by Allied and to which Gree objected to all of them.

---

[1] Jeff Murphy of Gordon & Rees participated in the April 9th telephonic status conference, along with Aaron Lindebak, on behalf of Gree. Mr. Murphy indicated that he serves as national counsel for Gree. The Court noted that Mr. Murphy was not admitted to practice in the Southern District of Iowa and inquired as to whether he was planning to file a motion for *pro hac vice* admission. Gree's counsel indicated that such a motion would be filed. As of the date of this order, no such motion has been filed. The Court orders that Mr. Murphy get his motion for *pro hac vice* admission on file in this Court by no later than April 23, 2019.

Federal Rules of Civil Procedure 33 and 34 allow a party to serve interrogatories and requests for production regarding any nonprivileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case . . . [the] [i]nformation . . . need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). As the Eighth Circuit has made explicit, "discovery is a[n] investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case and . . . the veracity of those persons and purported evidence, even if the evidence discovered is later deemed not admissible." *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 926 (8th Cir. 2014).

Allied's Motion seeks "full and complete responses to Plaintiff's Interrogatories and Requests for Production within the next seven (7) days from the entry of this Order." Allied also seeks sanctions on Gree or Gree's counsel for their dilatory and non-responsive answers. Allied "suspects that the lack of substantive responses is because Gree was not consulted regarding the preparation of the discovery answers." Allied finally notes that all the objections now relied on by Gree were waived as untimely, by not meeting the January 2, 2019, extended deadline. Relatedly, Allied also argues that any asserted objections are waived because they are merely boilerplate objections that evince no attempt to comply with Rules 33 and 34's specificity requirements.

Gree's resistance ignores Allied's waiver arguments or concerns about the way the deficient responses were prepared. Rather than focus on its own deficiencies, Gree attempts to explain why it owes no discovery responses to Allied because the requests are all "well outside the boundaries established in Rule 26." The Court notes that Gree has not filed a motion for a protective order asking that discovery be limited as allowed under FED. R. CIV. P. 26(c). Instead, Gree has chosen the "lazy person's approach" by stating numerous general objections to all discovery requests followed by additional boilerplate and unsupported objections to the specific

requests. The Court will not specifically refer to each of the individual objections and explanations for them provided by Gree. Instead, what follows are but a few illustrative examples of the types of discovery sought by Allied, and Gree's objections:

> **Interrogatory No. 3:**
> Please identify all policies, manuals and/or guidelines Gree USA has used/created since January 1, 2007 relating to, in whole or in part, the inspection of Gree China dehumidifiers and/or reporting the need for inspection, repair, or recall relating to any fire hazard.
>
> **ANSWER**: Defendant objects on the grounds that the interrogatory is overly broad, unduly burdensome, seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence in that it is not limited to any relevant time period or to specific products Upon which Plaintiffs claims are based. Defendant further objects to the extent this Interrogatory calls for information about prior lawsuits or other publicly available information which is equally available to Plaintiffs counsel. Defendant also objects as this interrogatory seeks work-product. Without waiving this objection, discovery is ongoing and investigation continues. This answer may be supplemented.

(Pl. Motion; Exhibit B [22-5] at 8).

> **Interrogatory No. 17:**
> Please state all actions taken by you in response to any recall of your dehumidifiers in the last 10 years.
>
> **ANSWER:** Defendant objects on the grounds that the interrogatory is vague, overly broad, unduly burdensome, seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence in that it is not limited to any relevant time period or to specific products upon which Plaintiff's claims are based. Defendant also objects on the grounds that Plaintiff has not established that the dehumidifiers that are the subject of this lawsuit were subject to any recall. Defendant further objects to the extent this Interrogatory calls for information about prior lawsuits or other publicly available information which is equally available to Plaintiff's counsel. Without waiving this objection, these documents have been requested. This answer may be supplemented.

(*Id.* at 22).

> **Request No. 8:**
> All documents relating, directly or indirectly, to any claim made by any person that the dehumidifier or a substantially similar dehumidifier overheated, emitted smoke and/or started a fire.

5

> **RESPONSE:** Defendant objects on the grounds that this request is overly broad and unduly burdensome. Furthermore, Defendant objects to this request as .it assumes facts that are still in dispute and not in evidence, Specifically, plaintiff has the burden of establishing product identity and is improperly attempting to shift that burden onto Defendants.

(*Id.* at 32).

As a preliminary matter, the Court finds that Allied's requests, with exceptions discussed below, meet the requisite threshold showing of relevance. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (discussing that Rule 26(b) requires a threshold showing of relevance). Allied's requests are relevant to the allegations made in its complaint or are otherwise relevant to the 33 affirmative defenses that Gree has raised in its Answer. Nearly all Allied's requests go to the question of whether Gree "knew or should have known" about defects. Gree does not "possess the unilateral ability to dictate the scope of discovery" by simply reiterating that the case is 'about a single fire caused by a single dehumidifier.' *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014). The Court similarly finds that Allied's requests, with exceptions listed below, are not overburdensome on their face. *See also Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 509 (D.S.D. 2015) ("Several courts have determined that where the discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise appropriate.").

With the foregoing established, Gree bears the burden of resisting production. "Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive." *Kirschenman v. Auto-Owners Ins.*, 280 F.R.D. 474, 481 (D.S.D. 2012), *objections overruled*, No. CV 09-4190-KES, 2012 WL 13040020 (D.S.D. Apr. 18, 2012). "The key requirement in both [Federal Rules of Civil Procedure] 33 and 34 is that objections

require 'specificity.'" *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 184 (N.D. Iowa 2017). "Although Rules 33(b)(4) and 34(b)(2) contain different language describing the means for objecting to interrogatories and requests for production, courts uniformly conclude that an objection [to either] may be waived if it is not timely raised and good cause for the delay is not shown." *Parshall v. Menard, Inc.*, No. 4:16-CV-828 (CEJ), 2016 WL 7188125, at *1 (E.D. Mo. Dec. 12, 2016) (omitting internal quotations).

Owing to the "specificity" requirement, district courts throughout the Eighth Circuit have consistently found that "boilerplate" objections constitute waivers as well. *See*, *e.g.*, *Liguria Foods*, 320 F.R.D. at 185; *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 512 (N.D. Iowa 2000) (discussing that boilerplate objections are "routinely deemed to be improper" by federal courts); *Near v. Eli Lilly & Co.*, No. 3:07-CV-00006-TJS, 2008 WL 11334459, at *1 (S.D. Iowa July 16, 2008). "In other words, merely asserting boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc. . . . without specifying how each interrogatory or request for production is deficient and without articulating the particular harm that would accrue if the responding party were required to respond to the proponent's discovery requests simply is not enough." *Liguria Foods*, 320 F.R.D. at 185 (omitting internal alterations and quotations).

Gree has waived its objections several times over. First, Gree waived its objections by failing to make them within the January 2, 2019, deadline for responding to Allied's discovery requests. Gree fails to argue any "good cause" to not treat its untimely objections as waivers, as it offers absolutely no reason for the untimely responses. Gree's failure to offer any explanation for its late responses is especially egregious given its general disregard for discovery deadlines set in this case. As to the discovery responses at issue, though as a general matter a court might properly

excuse responses that are a mere two-days late, the Court cannot ignore the reality that Gree's responses were initially due on November 19, 2019, and was only given the January 2, 2019, deadline by Allied because of Gree's multiple failures or otherwise unwillingness to send timely responses. Gree also initially indicated that it would be supplementing its deficient responses by March 5, 2019, and simply decided not to do so, forcing the instant Motion to Compel. Additionally, Gree flouted the Court's Initial Disclosures Deadline of October 19, 2018, by nearly 5 months. As a result, Allied apparently has received a single document from Gree in the 6 months since the Court entered its Scheduling Order.

Just as Gree fails to articulate any good cause for its untimely objections, the Court finds no reason to infer good cause. *See Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 426 (D. Minn. 2012) (referring to six individual factors that courts have used to assess good cause). Gree's overall disregard for discovery in this case has prejudiced Allied's ability to mount its case and is currently jeopardizing several deadlines set by the Court in its Scheduling Order. In contrast, treating Gree's late responses as waivers of objections would merely require it to participate in discovery and provide responses to requests that do not appear overly-burdensome on their face. This conclusion is bolstered by the fact that the untimely objections are also inappropriate boilerplate objections, as opposed to potentially meritorious objections that the Court may deem too harsh a penalty to treat as being waived. Consequently, all Gree's objections have been waived for untimeliness, except to the extent that any of the requested information calls for information that is protected by the work product doctrine or the attorney-client privilege as noted below.

As just alluded to, to the extent that Gree's objections were not waived for untimeliness, nearly—if not all—of Gree's objections constitute inherent waivers because they are boilerplate

objections[2]. One does not need to look searchingly to recognize the boilerplate nature of the objections. Initially, this federal court is struck by Gree's General Objection No. 9 which references that the interrogatories attempt "to impose upon Defendant obligations beyond those established by the Indiana Rule of Procedure or case law." Second, the most common objection raised by Gree is that the request is "overbroad, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence." Gree fails to substantiate why any of the foregoing is the case in those objections, and references language from Rule 26 that was explicitly removed in 2015. *See* FED. R. CIV. P. 26 ("The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted."). Gree frequently joins the former boilerplate objection with a subsequent boilerplate objection that the request "is not limited to any relevant time period or to specific products on which Plaintiff's claims are based." Gree fails to specify how the time periods as given are overbroad[3] or the request needs to be limited to "specific products." Gree frequently raises the objection that requests for production call "for information about prior lawsuits or other publicly available information which is equally available to Plaintiff's counsel." Gree cannot withhold responsive documents based on this boilerplate, non-objection.

---

[2] To the extent that out of state counsel is not familiar with this Court's interpretation and view of boiler plate objections, he should consult with his local counsel who have familiarity with those topics.

[3] Some of Allied's requests do not specify a relevant time period for the information sought in the request itself. Nevertheless, the temporal limitation to these requests is evident when referring to Allied's definitional section sent with its requests. (Pl. Motion; Exhibit A [22-4] at 1-3). Specifically, definition Number 13, which states that questions regarding dehumidifiers are seeking information about dehumidifiers "manufactured, designed, distributed, or sold after January 1, 2006" by Gree or (what the Court assumes are) its parent companies. The Court urges Gree to review Allied's definitional section, which would seem to address many of its conclusory assertions regarding the potential overbreadth of requests. Gree should pay particular attention to Definitions 10 – 13.

*See St. Paul Reinsurance*, 198 F.R.D. at 514 ("[C]ourts have unambiguously stated that this exact objection is insufficient to resist a discovery request."). Gree also frequently objects "as this [request] seeks work-product" and/or "for privileged information." Although Gree failed to comply with the requirements set forth in Rule 26(b)(5)(A)(iii) for lodging such objections, the Court will allow Gree to make specific narrowly tailored objections regarding information protected by the work product doctrine or the attorney-client privilege.

Gree does make two related objections that at least purport to provide specific facts in support. Several of Allied's requests ask for information about the Dehumidifier and "substantially similar" dehumidifiers. Gree has objected claiming "Plaintiff has the burden of establishing product identity and is improperly attempting to shift that burden on to Defendants. Plaintiff has failed to provide any proof of purchase for the subject product, a user's manual, product packaging, or other identifying information about The Product."

In its brief, Gree clarifies that it cannot give substantive responses to the discovery because Allied has not given it "any information regarding product identification" *besides* providing photographs of the dehumidifier from a joint lab examination and "alleging" that the dehumidifier was a SoleusAir model GM-DEH-45-1 dehumidifier. Gree also explains that due to the lack of information about the Dehumidifier as well as the fact it distributes several types of dehumidifiers, it would be "impossible" to determine what qualifies as a substantially similar dehumidifier.

During the hearing, Allied's counsel indicated that she had provided Gree with additional identifying information about the Dehumidifier. Allied has provided the power cord markings, circuit bard markings, compressor capacity date code, transformer markings and compressor terminal markings. In response to a question from the Court, Mr. Murphy indicated that Gree had not looked at this additional information to determine if that would further identify the

Dehumidifier. The Court instructed him to investigate that issue further with his client. The Court also instructed Allied's counsel to revisit with the insured whether she could recall a year and/or store where she would have purchased the Dehumidifier, again in an attempt to further identify the Dehumidifier.

The Court is not persuaded by either explanation from Gree. It is unclear why the make and model number, as well as corroborating photos of the dehumidifier, plus the additional information about the component parts is insufficient information for Gree to be able to produce, as one example, "all documents relating to the materials and plastics used in the dehumidifier." As to the impossibility of determining what is "substantially similar," the Court notes that Allied has provided a definition in its discovery requests: "[t]he term, 'substantially similar dehumidifiers' shall refer to all makes and model dehumidifiers manufactured by Gree Electric Appliance, Inc. of Zhuhai and that were recalled in 2012, 2013, or 2014." (Pl. Motion; Exhibit A [22-4] at 2). At the hearing, Mr. Murphy indicated that the recalls involved approximately 13 brands and at least 50 different makes and models. Given those facts, the Court finds Allied's definition to be overly broad and not proportional to the issue and damages in this case. The Court narrows the definition of "substantially similar dehumidifiers" to include all makes and model of dehumidifiers manufactured by Gree Electric Appliance, Inc. of Zhuhai for the SoleusAir brand and that were recalled in 2012, 2013, or 2014.

Nothing else in Gree's brief persuades the Court that Gree does not owe Allied substantive responses (except where further specified below). Gree expresses concern about requiring it to produce documents from third parties that are not in its control. If Gree does not have custody or control over the documents sought, it need only clarify this is the case in its responses. The Court notes that any responses of this nature would be intensely scrutinized by the Court on a subsequent

Motion to Compel. *See McAllister-Lewis v. Goodyear Dunlop Tires N. Am., Ltd.*, No. 4:14-CV-04103-LLP, 2015 WL 5794697, at *5 (D.S.D. Oct. 1, 2015). The same rational applies to requests that are "improperly addressed" to Gree, assuming it does not have custody or control over the documents requested. Gree's many concerns about overbreadth or lack of relevance are unconvincing in that its brief does little more than repeat those same boilerplate objections in substance. It's failure to specifically articulate why a request is not relevant or would be overburdensome to respond to is not saved by appending in one form or another the phrase that 'this case is about a single dehumidifier causing a single fire' to its boilerplate objections.

Gree must provide substantive responses to all discovery requests at issue except as noted in this paragraph. Gree need not respond to **Interrogatory Number 6**, as it seeks information that does not meet the initial threshold of relevancy at this stage of the litigation. Furthermore, Allied's counsel indicated that she actually was interested in knowing whether Gree had preserved or destroyed any relevant information but that is not what Interrogatory Number 6 requests. Allied may propound an interrogatory to Gree that specifically requests whether relevant information has been preserved or destroyed. Gree need not respond to **Interrogatory Number 22**, as it seeks information about amounts paid in response to claims that does not meet the initial threshold of relevancy. Gree need not respond to **Interrogatory 23**, a contention interrogatory which Gree can provide a response to as the end of discovery nears. Gree need only supplement its answer to **Request for Production 20** at the time supplementation comes due. Gree must respond to the discovery requests relating to "substantially similar dehumidifiers but only as to the Court's narrowed definition of that term.

In providing its responses, the Court will allow Gree to reassert objections based on work-product and attorney-client privilege. "[W]aiver of a privilege is a serious sanction most suitable

for cases of unjustified delay, inexcusable conduct, and bad faith." *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 363 (D. Neb.), *determination sustained sub nom. Carlson v. Freightliner L.C.C.*, 226 F.R.D. 385 (D. Neb. 2004) (omitting internal quotations). *But see Cargill*, 284 F.R.D. at 428 (applying six-factor test to assess good cause to forgo waiver and finding that attorney-client privilege had been waived); *Parshall*, 2016 WL 7188125, at *2 (treating boiler-plate attorney-client privilege objection as waiver). Gree may reassert these objections but must strictly comply with Rule 26(b)(5)(A). Any further invocation of these objections will be intensely scrutinized.

The Court now turns to Allied's requests for sanctions to be imposed on either Gree or its counsel. District courts have wide discretion in deciding whether to grant expenses or order sanctions when a motion to compel is granted in part and denied in part. *See* FED. R. CIV. P. 37(a)(5)(C); *Benavidez v. Sandia Nat'l Labs.*, 319 F.R.D. 696, 720 (D.N.M. 2017) ("[C]ourts generally conclude that justice requires that each party be responsible for their own fees and costs."). The court may "apportion the reasonable expenses for the motion" after "giving an opportunity to be heard" on that matter. FED. R. CIV. P. 37(a)(5)(C).

By April 24, 2019, counsel for Allied shall file and serve an itemized statement of fees and costs incurred regarding the Motion to Compel. The Court will then hold a hearing on the request for sanctions and allow Gree an opportunity to be heard on that issue before a ruling is made.

### IV. CONCLUSION

Allied's Motion to Compel [22] is **granted in part and denied in part.** As described above, Gree shall provide full and complete responses to all Allied's Interrogatories and Requests for Production, except for Interrogatories 6, 22, and 23 and the Court's limitations on the definition of substantially similar dehumidifiers. Gree's interrogatory answers shall be verified as required

by FED. R. CIV. P. 33(b). Gree shall provide Allied with its substantive responses by no later than April 29, 2019.

The Court orders that Mr. Murphy get his motion for *pro hac vice* admission on file in this Court by no later than April 23, 2019.

The Court further orders that Allied shall file and serve an itemized statement of fees and costs incurred regarding the Motion to Compel by April 24, 2019.

**IT IS SO ORDERED.**

Dated April 18, 2019.

_____
Helen C. Adams
Chief U.S. Magistrate Judge